No. 18,940.

B. W. NOLEN, *Appellee*, v. B. M. McCUE et al. (W. M. BELL, *Appellant*).

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Judgment by Default—Alteration of Note— New Trial—Accident and Surprise.* Judgment was rendered on a promissory note in an action in which the plaintiff alleged that he was the owner and holder of the note, the copy thereof attached to the petition showing that he was the original payee. One of the makers entered his voluntary appearance as defendant, and judgment was rendered against him by default. The original note filed with the judgment showed that it had been altered in a material matter after its execution and delivery, and that the name of the plaintiff had been written in as payee. Upon these facts and other circumstances shown in the opinion it is held that the court erred in refusing to grant a new trial on the ground of accident and surprise, the motion being filed at the same term at which the judgment was rendered.

Nolen v. McCue.

· Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed July 7, 1914. Reversed.

*R. J. Hopkins*, and *W. C. Pearce*, both of Garden City, for the appellant.

*Fred J. Evans*, of Garden City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: W. M. Bell appeals from an order of the district court refusing him a new trial upon a petition filed at the same term at which the judgment was rendered against him. The action was upon a promissory note dated April 9, 1908, due on demand after date, executed by The Bell Land & Loan Company, endorsed by W. M. Bell and B. M. McCue. The petition was filed April 1, 1912. It alleged that the plaintiff, B. W. Nolen, is the owner and holder of the note, a purported copy of which is attached to the petition. McCue and Bell were both made defendants. Bell entered his written appearance in the action on April 9; the judgment was rendred against both defendants by default on June 3. At the same term, and on the 6th day of July, Bell filed his motion for a new trial, and on July 8 filed in the same action a petition to set aside the judgment and grant a new trial, the motion and the petition setting up the same grounds. Application for a new trial was heard before the court on evidence and a new trial was refused.

W. M. Bell and B. M. McCue were partners engaged in business at Garden City under the name of The Bell Land & Loan Company. The partnership borrowed from the First National Bank at Garden City $2000 and gave to the bank the note upon which the suit was brought. In August following the execution of the note the partnership was dissolved by written agreement, in which McCue assumed and agreed to pay the note. The original agreement was deposited with the

bank, and the answer which Bell filed at the time he asked to have the judgment set aside alleges that the bank knew what the agreement contained and assented thereto.   Bell subsequently moved to Kansas City.   In September, 1911, he received a letter from an agent of B. W. Nolen, the plaintiff, stating that he held the note for collection; that McCue had refused to pay it, and that he would have to look to Bell for payment.   The letter stated that the loan was made through the cashier of the First National Bank of Garden City.   This appears to have been the first information Bell received that the note had not been paid.   In answer to that letter he wrote informing the agent of the dissolution of the partnership and the fact that he had been led to believe that the note had been paid by McCue, and declined to pay it himself.   Before the entry of appearance was filed McCue wrote to Bell, apologizing for his allowing the note to remain unpaid, and in the letter made the following statement:

"I had a talk with Fred Evans about two weeks ago, all of which he agreed to give me a little more time, as much as those people were so insistent on the judgment, and he thought that it would be nothing out of the way just to bring a friendly suit and drif(t) it from time to time until I could relieve the situation, all of which I will do at the very first possible moment and without any inconvenience to any one.

"Tell your wife not to worry, as this matter will be taken care of in some way without anyone being distressed."

The exhibit attached to the petition set up a note in the following form:

"'EXHIBIT A.'

"GARDEN CITY, KAN., April 9, 1908.
"On demand after date, for value received, we promise to pay to the order of B. W. Nolen at The First National Bank, Garden City, Kan., Two Thousand and $^{no}/_{100}$ Dollars, at its Banking Office in Garden City, Kan., with interest at eight per cent per annum from

date until paid, payable annually; and if the interest be not paid annually to become as principal and bear the same rate of interest.

THE BELL LAND & LOAN COMPANY,
By W. M. BELL, Sec.

"No. 17,411.
$2000.00.
Due Demand.
(Endorsed on back.)
    W. M. Bell.
    B. M. McCue.
8/10/08 Int. Pd to 7/9/08.
2/9/11 Int. 437.33 paid to 2/9/11."

We have the original notes before us; and they were offered in evidence in support of the motion for a new trial. The demand note upon which the judgment was rendered differs materially from the purported copy set out in the plaintiff's petition, and shows, we think, a material alteration. It reads:

"GARDEN CITY, KAN., April 9, 1908.
On Demand after date, for value received, We promise to pay to the order of————B. W. Nolen———— The First National Bank, Garden City, Kansas, Two Thousand and $^{no}/_{100}$————Dollars, at its Banking Office in Garden City, Kan., with interest at eight per cent per annum from Date until paid, payable annually; and if the interest be not paid annually to become as principal and bear the same rate of interest.

THE BELL LAND & LOAN CO.,
By W. M. BELL, Sec."

All the written portions of this note are in the handwriting of W. M. Bell except the name "B. W. Nolen"; that is in a different handwriting and was obviously written in the blank line by the same person who wrote the body of the memorandum note; and the circumstances indicate very strongly that the alteration was made at the time the memorandum note was executed by McCue, which was four years after the date of the original note. The plaintiff sues as the original payee and alleges the execution of a note payable to his order "at" the First National Bank, but

the note itself shows that it was originally given payable to the order of the bank; that the place of payment was not specified, and further, that the note was never by the bank endorsed to Nolen. Bell filed an answer along with his application for a new trial which set up facts showing a defense to the note in the hands of the bank.

That the judgment was rendered upon a note which was changed or altered long after its execution, without Bell's knowledge or consent, by inserting the name of another and a different payee, is not denied in the briefs filed by the appellee. The fact of the alteration was not known to Bell until after his entry of appearance and the taking of the default judgment. Apparently he was led to believe from the letters written him that the note had been endorsed by the bank to Nolen. It also appears that the First National Bank held a copy of the dissolution agreement by which McCue agreed to pay the note; and there was some evidence tending to show that officers of the bank informed Bell the note had been paid. It was more than four years after the note had been given that an agent of Nolen wrote to Bell that he held the note for collection and that it had been obtained through the First National Bank. In the letter from his former partner Bell was led to believe that the suit was a friendly one which would be allowed to drift along with the consent of the attorney for the plaintiff until McCue could take care of it, and it appears that Bell did not know until after the default judgment was rendered against him that the bank had never endorsed the note and that the note had been altered by the writing of Nolen's name in it as payee. Immediately after learning these facts, and at the same term of court, he filed his motion and petition for a new trial and used proper diligence to obtain it. While the granting of a new trial in a situation of this kind was in the discretion of the trial court, we must not

lose sight of the fact, as was said by the court in *Atyeo v. Kelsey,* 13 Kan. 212:

"Where a new trial has been granted, both parties have another opportunity of having a fair and impartial trial upon the merits of the action. But where a new trial has been refused, the matter is ended unless a reversal can be had. Hence new trials should be favored instead of being disfavored, wherever any question can arise as to the correctness of the verdict." (p. 216.)

There is some objection to the form of the application because no summons was issued, but the commencement of a new action to obtain another trial would have been a useless formality. The matter was called to the attention of the court at the same term at which the judgment was rendered. Moreover, the plaintiff's attorney appeared and cross-examined the witnesses at the hearing, and so far as the record discloses raised no technical objections at that time, and they should not be regarded as of importance now. In view of all the circumstances, and particularly as the judgment appears to have been rendered upon a note that had been altered after its execution and delivery to the bank, we think a case was presented which requires that in justice to the parties a new trial be granted.

The judgment will therefore be reversed and the cause remanded with directions to grant a new trial.