No. 18,940.

B. W. NOLEN, *Appellee*, v. B. M. McCUE et al. (W. M. BELL, *Appellant*).

OPINION DENYING A REHEARING.

HEADNOTE BY THE REPORTER.

PROMISSORY NOTE—*Judgment by Default—Material Alteration Discovered after Judgment—New Trial Ordered.* The former opinion (92 Kan. 870, 142 Pac. 958) holding that the court erred in refusing to grant a new trial is adhered to.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion denying a rehearing filed November 14, 1914. (For former opinion of reversal see 92 Kan. 870, 142 Pac. 958.)

*R. J. Hopkins*, and *W. C. Pearce*, both of Garden City, for the appellant.

*Fred J. Evans*, of Garden City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: It is true that in reversing the ruling of the trial court refusing to grant a new trial we attached considerable importance to the appearance of the original note produced at the oral argument by counsel for appellant, which not only shows on its face that it is an entirely different note from the one sued on, but also bears some indication of having been altered in a material matter.   No suggestion of any kind in explanation of this fact was offered by appellee, either in the briefs or at the oral argument, which led us to say in the opinion that the fact was not denied. In the opinion it was said:

"We have the original notes before us; and they were offered in evidence in support of the motion for a new trial."   (*Nolen v. McCue,* 92 Kan. 870, 873, 142 Pac. 958.)

In a petition for a rehearing it is asserted that the decision is "based upon alleged facts not germane to the issue before it, not in evidence before the trial court, and upon a misconception of the facts. . . . The affidavit of the appellant was not introduced in evidence.   The notes, which this court found much to comment on, were not introduced in evidence on the motion, and no reference to the notes, or rather to any alteration of the notes appearing on the face of them, was made throughout the hearing."   The original note was filed with the clerk of the district court when appellee took judgment, and it is admitted in the application for rehearing that it was "of course, available as evidence," and was at the time of the hearing of the motion for a new trial in the hands of the clerk.   Counsel is somewhat technical in stating that the alteration of the note was not referred to in the testimony of the defendant on the hearing of the motion.   At different times in his examination by the court the defendant attempted to explain that he relied as a part of his defense upon the

fact that judgment was taken upon a different note from that sued on, although the word "alteration" was not used by him.   We quote from the abstract:

"By the Court:
"Q.   Mr. Bell, you knew about the giving of this note, did n't you?   A.   Yes, sir.
"Q.   And your liability on it?   A.   Yes, sir.
"Q.   And knew that suit was to be entered against you and others for it?   A.   Yes, sir.
"Q.   And entered your appearance?   A.   Yes, sir.
"Q.   And all the reason you wanted a trial now is because you claim McCue did not carry out an arrangement with you in protecting the suit at the time?   A. I think you will find, Your Honor, in some of the affidavits there, or some of the statements there—
"Q.   This is the answer you tendered here, is it, attached to the application?   A.   Yes, sir, I suppose it is. Some place it said, I don't know whether in affidavit or not—my attorney probably ought to see me about that question before I answer it, Your Honor.
"Q.   I am just reading you the answer.   I did not find any real defense to the action. . A.   That may have been lost, Your Honor.   I made the statement in some of the papers here that the Bell Land and Loan Company never did make a note to B. W. Nolen.
"Q.   You don't deny the execution of this note do you?   A.   I do in the form it is.

"Q.   The only complaint that you have now is that McCue did not attend to the case and you relied on him to attend to it?   A.   That is one of my defenses, and the other is that we never did make a note to B. W. Nolen.
"Q.   So far as a lawsuit is concerned a man is supposed to hire his attorneys and rely on them and not rely on outside parties from a legal standpoint.
"By the Court:   I will take these papers and look them over and decide this case at the next day of court—about 8th or 9th of August.   I do not think, however, Mr. Bell is in very good shape to complain."

It appears that the original notes and the affidavits were not formally offered in evidence, and it may be that the court never saw them; but we assumed from

Nolen v. McCue.

the record that the court had examined them. The trial judge said he would take the papers and look them over.

We did not think it necessary in the former opinion to set forth all the circumstances shown in the evidence which convinced us that the defendant was prevented by accident and surprise from having a fair trial. His affidavit, which was among the papers and should have been considered as in evidence, had attached to it a copy of a letter received by him from the other maker of the note, his former partner, stating that he had arranged with Mr. Evans, attorney for the plaintiff, that a suit would be brought upon the note and allowed "to drift along."

The opinion contains the statement that before suit was brought plaintiff's attorney wrote the defendant to the effect that he held the note for collection and that it had been obtained through the bank. It is seriously contended that this is a misstatement of the facts for the reason that the letter did not use the word "obtained," but said, "this loan was made through the cashier of the First National Bank." No attempt was made in the opinion to quote the language of the letter, but merely the substance thereof. Of course, if the loan was made through the bank, the note was obtained through the bank.

In the opinion it was said that the note, with the exception of the name of Nolen as payee, was prepared in the handwriting of the appellant Bell. It is asked how the court comes by this knowledge. The answer is that all the written portion of the note, except the name of Nolen as payee, is in the same handwriting as the signature of Bell.

It is insisted that the reversal of the judgment violates former precedents where this court, notwithstanding it appeared that a new trial might well have been granted, declined to reverse the action of the lower court in refusing a new trial because it could not say

the lower court had abused its discretion. It would indeed require a slavish adherence to precedent to hold that because under some other circumstances this court refused to interfere in a case of this kind it is powerless to prevent an injustice now. There can necessarily be no fixed rule laid down as to what will constitute an abuse of discretion of the trial court in refusing to grant a new trial for accident and surprise. The fact that judgment was taken upon a note differing materially from the one sued upon, together with the other circumstances referred to, were thought by the court to present a situation in which the trial court should have set the judgment aside and granted a new trial. Without attempting to pass upon or prejudge the merits of appellant's defenses to the note, we are still satisfied that the facts in the present case are sufficient to justify a reversal of the judgment.

Rehearing denied.